Okay, Councilor, are you ready to proceed? I am. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Alyssa Kane, and I represent the petitioner, Mr. Emile Carmen-Mjivar-Umana. I'd like to start by requesting to reserve two minutes for rebuttal. Okay. Thank you. The agency erred in this case in four material ways. First, by relying on the Attorney General's 2019 decision in matter of LEA 2, which is unreasonable and is not entitled to Chevron deference. Second, even if LEA 2 is entitled to deference, the agency erred in its application to this case because the petitioner has presented substantial evidence to establish that his family was sufficiently socially distinct within their community in El Salvador. Third, the agency erred regarding Nexus because the petitioner has established that his family status was or will be at least one central reason for the harm that he fears on his return to El Salvador. Would you focus on the Nexus for us? Yeah, I was going to ask you the same thing. Sure, Your Honor. The agency erred in determining that the petitioner's family status was not at least one central reason for the harm that he fears. While it was correct in its determination that the initial threat was not on account of any protected ground, following that initial threat, his obligation to the gang, to the MS-13 in El Salvador, was attributed to his entire family. And their subsequent refusal to accede to the gang's demands created an animus against the family and resulted in the gang's vendetta against the family members. There's undisputed evidence. Oh, sorry. Does he still have a family in Honduras? His brother remains in Honduras at this time. I'm sorry, in El Salvador at this time. Just his brother? Yes, his father and mother have both since passed away. His father was killed. I was thinking, I mean, if he were to go back to Honduras, where would he go? If he were to return to El Salvador, Judge Fuentes, he would not have any safe place to return. The previous incidents when he was able, when he was deported to El Salvador in 2014, he was able to remain in hiding with an aunt in a different city, in Ilopongo. However, that aunt has since relocated to the United States for her own safety. And there is simply no other place in El Salvador that he can return and be safe. Where is his brother? His brother is, as far as I am aware, and as far as the record establishes, remains in hiding in El Salvador. Approximately two months before the record, before the marriage hearing, he was beaten severely and nearly into a coma and was hospitalized with multiple broken ribs by gang members who had been targeting the family since 2013, since the initial threat against the petitioner and their continued targeting of the family and their continuance of asking about the petitioner and his whereabouts constitutes evidence that they were continuing to target the family and will continue to target Mr. Emil Carmen Hubar-Armanez, Armana, on his return to El Salvador. Ms. Kane, let me ask this. Let's assume that we accept your argument about the definition of particular social group. And at least speaking only for myself, I do think that your argument as to why the BIA's precedent they're relying upon, LEA or LEAR, should not be entitled to deference. As they say there, everyone belongs to a family. And as you very forcefully point out in your brief, everyone also has a race, maybe not a political opinion, but they certainly have a race. So that cannot be a reason for excluding the social group that's argued here. My concern is one of two things could have happened here. And either way, I have trouble getting the nexus requirement. Either your client could have paid the $1,000 that was demanded of him. And I'm assuming that you would concede that had he paid the $1,000, either his troubles would have gone away or they would have come back and demanded more money and more money and more money and more money. But in either way, the behavior of MS-13 toward him would seem to me not to be focused on the nexus of the social group here, if we can see the social group for a second. But it would be motivated by and focused on the extortionate demand for $1,000. Now, how do you get around that? Sure. Thank you, Judge McKee. I think that's an accurate summary. And the initial request for money from the petitioner was not based on any protected ground. We certainly concede that they were not targeting him on the basis of his family membership at that time. However, since he fled El Salvador and did not pay the money, the gang returned to his family members. They turned to specifically his father and his brother and held them accountable for the money that he was owed. Their subsequent refusal over the course of seven years to pay, and they still have not paid, according to all evidence in the record, they never paid the gang. Their subsequent refusal within the context of the absolute dominance that MS-13 holds over its own territories in El Salvador, and it's established that they were in a territory controlled by MS-13. In that context, their refusal to accede to the gang's demands created the animus against the family that would lead to his harm in the future, that would contribute to his likelihood of harm in the future. And the expert witness in this case regarding country conditions, Dr. Allison, stated that his family membership, the fact that he was harmed in the past, or the fact that family members of his were harmed in the past significantly increases his likelihood of harm in the future on his return to El Salvador. But only because the money wasn't paid. If the money were paid, I'm assuming he would not, either he wouldn't run the risk of being harmed if he returns, or if he returns, they're going to continue to shake him down. But in any event, it doesn't seem like the family is involved. Certainly, the gang does want money. It's obvious that they were extorting the family for that reason in the first place. The fact that they do want money, however, does not mean that his family membership was not also at least one central reason for their targeting of him, the sports president. The fact that other reasons were pertinent to the gang's decision to target the family and their decision to harm the petitioner in the future does not mean that his family membership cannot also be one central reason. And I think that's one of the main places where the agency erred in its analysis regarding Nexus. They attributed the gang's motivations to general crime, to their desire for money, and to extort the petitioner's family and then stopped there without considering whether family membership could also be one central reason for their decision to harm the petitioner in the future on his return to El Salvador. The extortion is really bootstrapping the family Nexus, right? The extortion was certainly the basis for their targeting of the family in general. They certainly wanted money and that's why they went after the family members. However, they continue to go after the family members after the money was paid. And while the judge did not accept the connection between MS-13 and the father's murder, clear evidence indicates that the father was beaten and tortured and killed, dumped outside of town. And the expert witness in this case, the petitioner in this case, the petitioner's family in this case, all attributed those actions to MS-13. There's no reason to kill him if they still wanted money from him. He's not going to be able to pay them now. Certainly their decision to punish the family was based on the family's refusal to pay. He has now been here for six or seven years if I'm not mistaken. That's right. He was last deported to El Salvador in 2014 and returned in early 2015. Does he still have any family in El Salvador? His brother remains in El Salvador at this time. He does not have any, I'm sorry, his brother Carlos remains in El Salvador at this time, but he does not have any other family members remaining in the country. So if he were to go back, if he were to be removed, where would he go? He would not have a safe place to return to in El Salvador. I think that's getting to the point. Is there not a safe place somewhere in El Salvador to which he could go? The country conditions in this case, the expert witness testimony in this case, and the petitioner's testimony in this case, all support a finding that there simply is no safe place in El Salvador for him to go. He cannot safely relocate in the country. The expert witness in this case, Dr. Allison, described the country. It's very small. It's the size, around the same size as Massachusetts. You can get from one end of the country to the other in a matter of hours. And the nature of the gang's control over individual territories within the country means that anytime you enter or leave a territory, they know, they are watching. They are purposefully, that's one of the methods of control that they use, is monitoring who enters and who leaves their territories. Does that include the country's capital, El Salvador? Soyobongo, the area where the respondent lived, is an area in San Salvador. Let me ask this. Let's assume that we conclude you can't get over the nexus hurdle for the asylum claim. And as far as the CAT claim is concerned, you don't have to worry about the nexus. And the BIA seemed to think that you couldn't show acquiescence or the inability of the Salvadorian government to control MS-13 because they'd established, one of the reasons was they'd established this special unit, which, at least to my mind, doesn't mean much. The fact they've established a special unit doesn't mean the special unit wants to do anything or can do anything. But how would you address the BIA's conclusion that there's no acquiescence here? The board actually did not specifically address the immigration judge's determinations regarding acquiescence. That's right. It was the IJ that did it. You're right. The immigration judge's decision, however, was not based on substantial evidence in this case. He based his decision on the fact that, as you said, there was this special task force established to address gang violence in the country. There was an expert witness in the case, a former police officer in El Salvador who claimed that he prosecuted multiple cases of corrupt police officers in the country. And therefore, the immigration judge concluded, based on that, that corruption was not an issue. However, the police officer in that case was less than a police officer in El Salvador in 2014. He himself had to flee the country because of threats against his own family members. There is a document in the record from the police station where he was working that stated that the station could not offer resources to protect his family members. And he was essentially on his own and making sure that his wife and sister were not harmed because of his own actions. The substantial body of evidence in the record since then supports the idea that police corruption remains a substantial problem in El Salvador. It is widespread. There is impunity, not just among police officers, but also among the judiciary, among mayors. Ms. Cain, is it your view that no matter where he goes in Salvador, it would be unsafe for him to return to the country? You're muted. Sorry about that. That is certainly our view of the evidence. In this case, the substantial body of the evidence suggests that there is no safe place that he can return in El Salvador. Anywhere he goes in El Salvador, he would be targeted by the MS-13. Maybe you can answer this. I mean, if that were the case, anybody would have a right to stay in this country because if they return to Salvador, regardless of where they go in that country, it would be unsafe. I don't believe that that's the case for every single person in El Salvador. While certainly the average person in El Salvador is more likely to experience violent crime than, for example, the average person in the United States, the average person in El Salvador cannot show, as the petitioner has here, that he has a clear probability of torture or murder in El Salvador with police acquiescence. Here, the petitioner established his brother has recently, as recently as 2019, been beaten, likely arising to the level of torture. And his brother is similarly situated to him and for the same reasons. His brother was also asked about the petitioner's whereabouts on multiple occasions, indicating that the gang is still specifically looking for the petitioner because of his flight and because of his family's refusal to pay the money that they asked for the following seven years. Is it your view that no place in El Salvador is safe? Certainly, no place in El Salvador is safe for this petitioner. The petitioner cannot go anywhere in El Salvador without being identified as somebody who has fled the MS-13 gang. Would it be appropriate for us to remand this for the BIA to consider the CAD claim in light of the record? I believe that the petitioner has established substantial evidence to show a clear probability of torture and also a clear probability of public acquiescence. I believe that remand is certainly appropriate. However, this court can certainly instruct that substantial evidence on both of those issues has been established under the record. And we would certainly find a remand on those grounds appropriate, considering the agency's errors in that regard. Their dismissal of his brother's... Oh, I'm sorry, your honors. I think I might be out of time. No, I think the reminder was you've got two more minutes. Oh, great. Thank you. Sorry, I'm running late. Given the agency's dismissal of the petitioner's connection between himself and his brother's torture as speculation, despite clear evidence in the record that his brother was targeted on multiple occasions after his own flight, that his brother was asked about his whereabouts on multiple occasions, that his brother is still in danger in El Salvador, we believe that that finding was clear error. The agency also improperly relied on his ability to return to El Salvador in the past. However, the two occasions that he was deported in 2014 were prior to his brother's beatings. And of course, they were also prior to his father's brutal murder. Which was reported widely in the news when it occurred, when his body was found, dumped in a ditch outside of town. There was some issue in the IJ's mind whether or not that murder could be attributed to MS-13. And the IJ's opinion here is not like most of the ones that I've seen. It was thorough, it was comprehensive. It actually cited relevant law to support it and was a well-crafted opinion from IJ's. And that's not just dispersed, cast dispersions on IJ's. They have a ridiculous caseload. I mean, they just can't take the time to sit down and work through careful opinions. But this was a lengthy, pretty well-reasoned opinion. Yes, Judge McKee, the judge did take the time to issue a written decision after this case addressing the evidence in the case. However, his decision to not approve the petitioner's father's murder to the MS-13 was based solely on the fact that nobody had been caught and nobody had confessed. Not only does that contribute to finding of corruption and impunity, the fact that his father was brutally murdered and nobody was ever identified or prosecuted for that crime. That conclusion simply goes against the weight of the evidence. The expert witness in this case, Dr. Allison, determined that the petitioner's father's murder was very likely linked to the threats that he had experienced from the MS-13 in the past. The petitioner himself stated that he knew that his father was being threatened by MS-13 on the basis of the extortion threats and on the basis of the gang's targeting of the family in general. And those were, the evidence in the case all points to the fact that they murdered him as punishment for failing to pay and because they wanted the family to experience retribution or vengeance for their refusal to accede to the gang's demands. Okay, thank you. Your time is up now, Ms. Keane. Is there some time, unless my colleagues have any questions, we'll ask Ms. Wellhoff to respond. Yes, Your Honor. Am I, can everyone hear me? Yep. Did I pronounce your name correctly? You did, Wellhoff. Thank you. Thank you. Ann Wellhoff for responding, United States Attorney General. I think Judge McKee has really honed in on exactly what this case is. This is an ordinary crime case. There is no evidence in this case there was particular animus against this particular family. This case is all about the money. I think Petitioner has admitted both on brief and certainly at argument here today that the initial encounter with the Petitioner was not motivated by a protected ground. They've admitted that. It's hard to see how then the follow-up was there for the two follow-ups that they're alleging could possibly be motivated when the initial one wasn't in and of itself. This is a case, again, this isn't about targeting this family because they had a grudge against this particular family. This is about money and pecuniary gain and this court and others have repeatedly held that desire to reach financial rewards is simply insufficient. I would also say that Petitioner made an interesting, Petitioner's counsel, an argument when Judge McKee asked, is there anywhere in El Salvador that he could go and safely reside? And she said, there's absolutely nowhere he can go and not be recognized as someone who fled the MS-13 gang. I want to highlight that that's a whole different social group than what's at issue in this case. Though, you know, young men who fail to succumb to forcible recruitment, that could have been a social group he raised, but he didn't and that's not at issue. We're talking about his family here. That's the only social group at issue. Well, they weren't trying to recruit him though. They were just trying to get, the cases we've seen where that's the case, they do literally say you join us or you're dead and people flee. And that would clearly be a case where there's a fight based upon resistance to recruitment and maybe the social group can be defined that way. But that's not what we have here. As I read the record, they weren't trying to recruit him. They didn't want him. No, no, you're correct. I was using it as an example, but it still could have, she said, he can't go anywhere and be recognized as someone and not be recognized as someone who fled the MS-13 gang. So like groups of people who fled the gang couldn't, I mean, she could have argued that's a social group, whether or not they were trying to recruit them or not. I think, I don't think that the court should focus on that because that's not what's at issue. What's at issue is this family. And based on the evidence in this record, the initial targeting was not because they had animus against Petitioner's family. And the follow-up was not either. It was about money and it was, and this is about crime, unfortunately, and sadly, it's rampant in El Salvador and that's well-documented, but that's not on ground. What about, go ahead. Could there come a point where the familial relationship could constitute at least one central reason for the persecution? Well, certainly in the right fact, there could. And I think that the matter of- What kind of facts support that in your- Well, you would have to show, it would have to meet, in order for a family to be a social group, it would have to meet the requirements which this court has very vigorously accepted as the requirements, immutability, particularity, social distinction, and in SCRL, this court vigorously agreed with the agency's precedential decisions of matter of MEVG and WGR and agreed. This court has made some very poignant statements that families can, but you would still have to show that the families recognize, not just in general, as everyone has a family, but you'd have to show there's something that sets this family apart and they're recognized by society, not just by the people that are allegedly persecuting them, that society sees members of this family as a group of socially distinct people. And that's the law. And I think if you could show that, you could show. Does he, in fact, have family in Salvador? I'm sorry, I didn't hear that. Does he, in fact, still have family in Salvador? I believe his brother is still there. That's in the record, that his brother's still there. And she did mention on argument that he was in hiding. I don't believe that he's in hiding is in the record, but perhaps it is. I didn't see it, but he's there. The father's no longer living and the mother, I can't, I'm not sure that's in the record as to her whereabouts. All right, I hear from Ms. Cain that there is really no good, safe place in Salvador that crime is rampant and wherever he goes, he will have a big problem. Is that fairly accurate? I think crime is rampant there and I think that's well-documented, but I also don't think it's well-documented in this record or not, at least in the record evidence that he can't go anywhere safely. I don't think the record shows that. And again, I would go back to what she said in her argument is that there's nowhere he can go. He won't be recognized as someone who fled MS-13 gang. There was no mention that he'd be recognized as a member of this particular family. She didn't say that. I don't think she could argue that because there's just no evidence in this record this family has any recognizability within society over and above what any other family has. And I think his family's subject to the same risks living in El Salvador as everyone else. And unfortunately there is a lot of crime there, more so than the US and their law enforcement, although they try are not perhaps as effective, but that doesn't transmute that into willful blindness or participation in any kind of criminal activities. The gangs are a problem there, but I do not believe that he could, many people do live safely there. And I don't think this record has evidence that would say he is unable to do that anywhere. I don't, I see no record evidence that would support that conclusion. What do you make of the discussion as it were about a cat remand in light of the BIA's treatment of that issue? Well, I don't think we need a cat remand. I think, I believe it was Judge McKee was concerned as to whether they were, whether they held acquiescence or not, or participation by the government. Is that my understanding of what? Okay, I think, yeah. I think that there was more, it was broader than that. The immigration judge held that on the record as a whole, that this applicant didn't show that's more likely than not that he would be tortured by or at the instigation or consent of a public official or person acting, with their authority in El Salvador. He didn't, I believe there's multi factors you must show to get cat. And one of the, that was just a much broader finding that he didn't meet any of the prongs of showing eligibility. He didn't show past torture and he didn't show that if there's a clear probability he's gonna face torture and not at the hands certainly of the government. I don't think there's any need to remand at all because I don't think there's evidence that he would face torture at, by or with the willful blindness or acquiescence of the El Salvadoran government. The evidence doesn't show that at all. And I don't think there was anything in error or erroneous about the agency stating that the evidence didn't show that. And I think that the board's decision mirrors that and states broadly that he didn't meet any of the prongs to show eligibility for torture. So I don't think there was error at all in the cat finding. And I do think it's well-grounded. Do you think that what happened here is sufficient under the Miri prongs and the way you have to examine a cat claim under a Miri case, Miri or Mari? I'm sorry? Do you think that what happened here is consistent with a Miri or Mari, M-Y-R-I-E analysis? And if it's consistent, why is it consistent? Well, I think that in that case, the holding was that the applicant bears the burden to show the likelihood of torture and the public official's likely response to such torture. Here, they did show, I believe, well, the evidence is that there's a big, it's a tough job to be effective against the gangs because they're fairly countrywide. But I do think that the government is making efforts to do so. I don't think, I think the evidence is that the government is trying to combat that. I think that the alien did not show or did not meet his burden to show that the response would be so lackluster, so disinterested that it would result in acquiescence to torture. I don't think the evidence supports that at all. And that's what they would have to show under Miri. So I don't think from a factual evidentiary standpoint that this alien hasn't pointed evidence that would compel. And again, we're at a very deferential standard here. And the evidence is fairly lacking in this case. There's a lot of speculation. And when you agree with the fact that the very initial encounter, which is the only time this petitioner was ever encountered himself by the gangs was the first time when they demanded money. Once you admit that wasn't even related to a protected ground, it's hard to see how any follow-up for the money could possibly be. And I don't believe they have shown that any follow-up was on account of a protected ground here. It was clearly to pecuniary criminal gain. This court's longstanding precedent says that is not a protected ground. The police's ineffectiveness is not gonna be enough to bring them under the ambit of acquiescence and blindness or willful blindness. And I think even the experts- Well, why wouldn't it? They're totally ineffective because the statute says unwilling to or unable to. So if they're unable to, go ahead. I don't think, there's lots of documents in this record showing gang members prosecuted. I mean, they may not be successful all the time. They may not have a great success rate, but to say unable is a pretty broad statement. I don't think they're unable to bring justice to a lot of these gang members. Probably they don't bring as much as the public would like and they would like, but I don't think unable fits these facts. Could it in a different situation with more evidence? Maybe, but I don't think on these particular facts you could say unable. And I think that, in fact, the efforts and the record does contain evidence of successes of bringing gangsters to justice. Ms. Wilhuff, could you comment on a question I had asked Ms. Kane about Menjobar going back to Salvador and relocating in a different area of Salvador? And she suggested that the bad guys are gonna find him anyway. Somehow they would find him wherever he goes in Salvador because crime is rampant there and there's a network of information et cetera, et cetera. Could you comment on that and whether that's accurate or not? Well, I don't think that the facts support that and that would be a factual finding. He went back there and supposedly hid in his aunt's house for extended periods. He wasn't found then. Now, even though his aunt's house no longer exists. Isn't it, Ms. Wilhuff, a telling that he in fact had to hide when he went back? Well, his testimony is that he stayed hidden in his aunt's house. I know that his aunt no longer has that house but he was able to go there and to live unharmed for extended periods. Yeah, but the fact that he was able to hide does not mean that he was able to go someplace safely. That's like saying it was safe for Anne and Frank in Germany because she successfully hid in the attic for a number of years. Well, I think the burdens on him to show there was no place he could go and reside safely and he didn't show that. And again, petitioner's counsel says he'd be recognized as someone who fled the gangs. Again, that's not the social group we're addressing in this case. How's he gonna be recognized as a member of this particular family? And 100, 300 miles away, nobody's been socially... This family doesn't have the countrywide visibility and recognition that's needed to make the family a viable social group. I don't think the factual evidence in here at all supports his burden, which he has to show he can't go anywhere without being targeted because of the social group he's arguing, which is his family. There's no evidence of that at all. There's just, it's not in the record at all. He hasn't met his burden. Does that requirement, I just don't really answer this question. I should, after hearing so many of these cases, the requirement that he must show that there's no place he can go without being harmed clearly applies under the immigration laws. Does it also apply under the CAT or is that a requirement that doesn't pertain to the Convention Against Torture? Relocation, under the regulations, if you can safely relocate somewhere and not be tortured, then yes, that is also grounds to deny CAT. That is correct. CAT withholding, yeah. Safe relocation would preclude relief or protection under CAT. And that's, for CAT, it's regulatory. And it's in the regulations for withholding under the INA and certainly asylum. I'm getting the impression there aren't too many safe places in Salvador. Well, it's, there's a lot of crime. His aunt's attic, maybe. Gangs, corruption, any number of things. And they could really find out very quickly where Mr. Medjevar is located. I don't think, I don't, I don't believe there's evidence in the record that shows they would easily find out where he's located or that they have an interest in his family or that his family is recognizable. The evidence is lacking in this case. And that, I think this case can be disposed of entirely on nexus. And I think the decision on nexus is well-grounded in this factual record. This record, as the court looks through the testimony, I believe is lacking, that this family has any social visibility or likelihood of being recognized or that they were targeted because of that. They were targeted because there's crime in that country and because these thugs wanted money. And that's why they targeted them initially. And that, any follow-up was because of that. As far as the brother's death goes, it's terribly tragic and unfortunate, but there is an evidence as to who caused that or what were the circumstances. And unfortunately there's, you know, lots of crime there. So that's speculative too, to connect it to this social group. I think that's speculative. That's a good point that you make, and maybe Ms. Kane can respond to. They are interested in money and that's what they were targeting him for for the times when he was there. And I get the impression he doesn't have any more money, so to speak. So maybe they will lose interest in him in as much as he doesn't have the kind of funds that he had before. I think that's very true, yes. And so bottom line is that I think this is sadly another one of the many cases of ordinary crime occurring in El Salvador and someone not wanting to go and be subjected to ordinary crime, but that is not what the law provides protection for on these facts. And respondent would ask that the court deny the petition for review. Ms. Wilhuff, thank you very much. Thanks. Unless my colleagues have any other questions we can hear back from Ms. Kane. Ms. Wilhuff, you still, I think, have a little bit of time left anyhow, but from the tone of your voice, it sounded like you're basically finished with your argument. Well, if the court has any questions, I'll certainly entertain them. I believe this case is disposed entirely on nexus. The court, it would be easy to get bogged down in matter of LEA, which I firmly believe should be given deference in that under this court's precedent, SCRL, there was a lot of discussion in there about family as a, you know, kinship ties and family as a social group, and a lot of favorable language that suggests this court would also, I believe, agree based on that precedent to give deference to matter of LEA. But I don't think the court needs to go there in this case. And I do, I think, I've read through the record several times in preparation for this argument, and the evidence is just lacking. It's speculative. And once you admit the first targeting wasn't part of a protected ground, it's hard to, I believe, any follow-on is just similarly not a protected ground. So unless the court has questions, that's- I do. What is his current status? What, where is he? I wanna know that, too. Where is he? I'm sorry? What is his current status? Where is he at the moment? He's not detained, although, I do not believe he's detained, although Petitioner's Counsel can correct me if I'm wrong. I do not believe he's detained. So I'm not sure exactly where he is, but not in our custody. Okay, that's helpful. Thank you. Thank you, Ms. Bohoff. Ms. Cain? Yes, thank you, Your Honor. Do you wanna say something else, Ms. Bohoff? I am, I'm concluding unless you all have questions. Okay. No, I don't think we do. Thank you. Thank you. Ms. Cain? Sure. So to answer Judge Fontes' question first, that Petitioner was detained for the majority of his proceedings before the agency, but was released on parole earlier this year and is residing with his family here in the United States in Massachusetts. He was, I believe it was in January. To address the arguments of Ms. Bohoff regarding Nexus, to say that this is simply an ordinary crime case and that there is no evidence of family membership ignores the mixed motive precedent from the board in Deshamia in recent cases such as Contreras-Castro, the attorney general of the criminal acts can constitute persecution with the correct facts. And I believe the facts have been established here that family membership will be at least one central reason for his targeting in the future because of the nature of the gang's actions and vendetta against his family in the past. He testified in his testimony that the MS-13 repeatedly told his father and his brother that the family would have to respond for the Petitioner's actions in the past that because the family refused to cooperate them and refused to do what they were asking despite all of the mistreatment against them. Ms. Bohoff was thinking to herself, well, that's exactly right. The family would have to pay for his actions of not paying the money, not for his membership or identity with the family. Sure, but the Petitioner in the future will be targeted because of his relationship with his family because the family then refused to do what they were asking. The family continuously refused for the following seven years to comply with the gang's demands and the Petitioner in the future will be targeted because of his family's subsequent refusals. So the question is why will- He's targeted because of the family's refusals. That's different from saying he's targeted because of his membership in the family. That's her entire point. I believe that the family's refusal would create, the argument is that the family's refusal creates the animus against the family. Because of the family's refusal is a challenge to the gang's dominance in the area. The gang relies on their control over the territory and specifically the, I'm sorry, I believe that was actually already two minutes. Well, no, quick question. How old is he now, if you know? He is in his 40s, I believe. He's 42. Okay. Just one thought on the other, based on what you just said, do you really think it's been six years, maybe seven years that those bad guys are actually going to recognize him and target him for more money? Well, I believe that the evidence in the record does establish that the individuals involved were continuously targeted for the entire period of time. When evidence was last taken in this case in late 2019, early 2020, his brother had just been beaten to the point of torture. He was, multiple ribs were broken and he was placed into a coma. Over the course of, between 2015 and 2019, his brother was beaten on multiple occasions, was hospitalized on each occasion, was actually left for dead on the floor on one of those previous occasions. There is no evidence saying we'll stop targeting them. And the witness reports in this case, the country condition reports in this case, all support that time does not decrease the likelihood that a threat will be carried out because the ability to carry out these threats is one of the main reasons or one of the main methods by which the gangs maintain their dominance over their territories. So it's necessary for them to carry out any threat that they give, regardless of how much time has passed. So, sure. Okay. You cut yourself off there. I just wanted to make sure that there wasn't any other question about that. If I'm able to, I'd like to turn to the question of the Myery elements and safe relocation, but I am out of time. So, hopefully. I can wait to hear your argument on the relocation. Thank you. Thank you, Counselor. Take the matter into advisement. I want to thank you both, Ms. Kane and Ms. Wahab. Very exceptionally fine arguments. And we don't always see the quality of argument in these kinds of cases that we got today. So, I very much appreciate your preparation, your time, and your argument. Thank you, Your Honor. Thank you very much, Your Honors. Have a great weekend. Thank you. Have a great weekend. And thank you again. Take the matter into advisement.